UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:  In Proceedings Under Chapter 11

Global Enterprises Realty Co., et al.,  Case No.: 09-21481
Jointly Administered

Debtors.  JUDGE RANDOLPH BAXTER

## MEMORANDUM OF OPINION AND ORDER

PNC Bank, National Association (PNC), the principal secured creditor of Global Enterprises Realty Company (Global/The Debtor), seeks appointment of a trustee to administer the Debtor's bankruptcy estate. Such relief is opposed by the Debtor. Upon conclusion of a duly noticed evidentiary hearing, the following factual findings and conclusions of law are hereby rendered:

\*

The Debtor, an Ohio corporation, sought voluntary relief under Chapter 11 proceedings by filing its petition on December 4, 2009 in this district. The Court acquires core jurisdiction of this matter pursuant to 28 U.S.C. § 157(b)(2)(J), with jurisdiction further conferred under 28 U.S.C. § 1334 and General Order No. 84 of this district. On December 7, 2009, the Debtor's affiliated companies filed their respective petitions for voluntary relief under Chapter 11 of the Bankruptcy Code. The Debtor and its affiliated companies have been approved by this Court for joint administration.

1

The following facts are generally not in dispute: The Debtor manages fifty-five (55) residential apartment buildings, comprising some 971 rental units located in the cities of Cleveland, East Cleveland and Cleveland Heights, Ohio. Each of the 55 apartment buildings is separately owned by the affiliated debtors, respectively. These buildings are subject to security interests held by PNC, Dollar Bank and Home Savings Bank. PNC is the Debtor/Affiliated Debtor's prime secured lender, holding an aggregate claim of $18.7 Million. Dollar Bank and Home Savings hold secured claims of $2.17 Million and $3.34 Million, respectively. Unsecured debt is scheduled in the total amount of $2.22 Million.

∗∗

The dispositive issue for the Court's determination is whether the evidence adduced warrants the appointment of a trustee to administer the Debtor's bankruptcy estate.

∗∗∗

In support of its motion for appointment of a trustee, PNC contends as follows: 1) The Debtors' principals, prepetition and postpetition, have intentionally and knowingly expended its cash collateral on personal expenses without the Bank's authorization; 2) The Debtors have failed to currently pay their real estate taxes, utility expenses, and their lenders when due; 3) The Debtors are unable to accurately account for the allocation of rental revenues; 4) The Debtors' principals have employed several family members with inadequate or no oversight and 5) The Debtors' principals have wrongfully commingled and directed corporate funds for personal use.

In response, the Debtors categorically deny PNC's contentions, except for the contention addressing commingled funds. More specifically, the Debtors assert that the appointment of a trustee will not be in the best interest of the Debtors' bankruptcy estates. They further assert that

2

none of the Debtors' lenders hold valid perfected security interests in the Debtors' cash collateral. (Trial Brief, p. 10). Further, they allege that bankruptcy relief was pursued to forestall the termination of utility service. Id. at 13. Lastly, the Debtors assert that they have not engaged in any fraud, dishonesty or mismanagement.

\*\*\*\*

Section 1104(a) addresses the requirements for an appointment of a trustee and provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee-
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. [11 U.S.C. 1104(a)(1) and (2) ].

11 U.S.C. § 1104(a).

A party seeking appointment of a trustee is reposed with meeting the required burden of proof. Herein, such burden is upon PNC. The standard of proof required is clear and convincing evidence. *In re General Oil Distribs., Inc.*, 42 B.R. 402, 408 (Bankr.E.D.N.Y.1984); 5 L.P. King, Collier on Bankruptcy ¶ 1104.01, at 1104-20 (15th ed. 1988). For evidence to be "clear and convincing" it must "produce[ ] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Director, Missouri Dept. of Health*, 497

3

U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). Once a prima facie case for such relief is established by the movant, it is necessary for the non-moving party to come forward with evidence sufficient to overcome the movant's prima facie case.

Appointment of a trustee in a voluntary Chapter 11 case is considered extraordinary relief. *In re William A. Smith Const. Co., Inc.,* 77 B.R. 124 (Bankr.N.D.Ohio 1987); *In re Tyler,* 18 B.R. 574, 577 (Bankr.S.D.Fla 1982). Courts, generally, favor leaving a debtor, debtor-in-possession in control and possession of estate assets for administrative purposes. *In re Cole,* 66 B.R. 75, 76 (Bankr.E.D.Pa.1986). As noted above, §1104 of the Bankruptcy Code provides statutory authorization for the appointment of a trustee, where appropriate. Where specified cause is demonstrated pursuant to §1104(a)(1), appointment of a trustee is mandatory. Otherwise, in the Court's discretion, where such appointment is determined to be in the best interest of the debtor's estate, under §1104(a)(2), a trustee may be appointed.

Section 1104(a)(1):

Section 1104(a)(1) provides a non exhaustive list of what may constitute cause. Enumerated in the list is gross mismanagement of the business by current management. Gross mismanagement is evidenced by the [management's] chronic failure to pay taxes, particularly where the failure leads to liability for interest and penalties. *In re Euro-American Lodging Corp.* 365 B.R. 421, 426 -427(Bankr..S.D.N.Y.,2007). Gross mismanagement may also be found if a debtor fails to maintain complete and accurate financial records, or fails to substantiate undocumented transactions, so that there appears to be a confusion in the debtor's accounting system. *In re Main Line Motors, Inc.,* 9 B.R. 782 (Bankr.E.D.Pa.1981); *In re Anchorage Boat Sales, Inc.,* 4 B.R. 635 (Bankr.E.D.N.Y.1980); *In re Hotel Associates, Inc.,* 3 B.R. 343

(Bankr.E.D.Pa.1980). Although the factors used to determine gross mismanagement will vary depending on the facts of each case, oftentimes elements of fraud, in addition to negligence are found. *In re Microwave Prod., of Am., Inc.,* 102 B.R. 666, 676 (Bankr.W.D.Tenn.1989).

The Court, firstly, considers the applicability of §1104(a)(1) to the evidence adduced herein. Among its several contentions, PNC contends that the Debtors' principals, Robert and Shirley Lyons, have commingled personal funds with the Debtors' corporate funds to defray personal expenses. Interestingly, record evidence reveals that the Debtors' principal shareholder and chief executive officer, Robert Lyons, concedes that such conduct occurred. (R.Lyons, Cross-Exam). The personal expenses paid for with corporate funds include, among others, certain acquisition costs for the Lyons' personal residence and numerous gambling-related expenses. (R.Lyons, Cross-Exam) (See also, Exh. 3)

Commingling of personal funds with corporate funds which result in personal expenses being paid out of corporate assets constitutes not only a wrongful breach of the principal's fiduciary duties but, additionally, constitutes gross mismanagement, if not fraudulent use, of corporate assets. *See e.g. In re Ford*, 36 B.R. 501 (Bankr.Ky. 1983). The testimony of Robert Lyons was generally credible. His testimony reveals that he knowingly and intentionally used corporate assets to pay personal expenses. (R.Lyons, Cross-Exam).

The Court's record and the evidence further shows that Robert Lyons executed several security agreements and guaranties with National City Bank and its successor-in-interest, PNC. These documents were executed both in his corporate and personal capacities. As a result, PNC is currently owed some $18.7 million by the Debtors. Prepetition, PNC obtained cognovit judgments thereon. Upon bankruptcy filing, approved by Robert Lyons, the Debtors sought and

5

obtained Court approval to use cash collateral. Those actions acknowledged PNC's priority and collateralized security interest in the Debtors' assets, both prepetition and postpetition. Indeed, PNC holds first lien priority on all of the Debtors' assets for purposes of securing its collateralized interest. Armed with such knowledge, the Debtors' principals (Lyons), wrongfully used PNC's cash collateral to defray their personal expenses, as alleged.

The Lyons' testimony that their gambling winnings were all placed into the Debtors' corporate checking account is not supported by any evidentiary proof. Nor can such contention be discerned from their 2008 joint tax return or any other documentary proof. (See, Exh. 12).

It is further unrefuted from the evidence admitted that, in addition to the commingled funds, PNC has received no payment on its secured debt since early 2009. The Debtors have extensive delinquencies on real estate tax obligations which have resulted in exorbitant interest penalties, in addition to extensive delinquencies on other secured obligations owed to Dollar Bank and to Home Savings Banks; utility payments remain in a delinquent status with no evidence of adequate protection arranged for the utility providers of record. (R.Lyons, Direct; R.Lyons, Cross-Exam). The evidence further shows that the Debtors, both prepetition and postpetition, have failed to segregate tenant rental deposits. Rather, those deposits have been routinely placed in the Debtor's operating account. (Spinelli, Cross-Exam).

Upon these findings and conclusions, PNC has met its burden of proof by clear and convincing evidence to warrant this Court's appointment of a trustee to administer these Debtors' bankruptcy estates pursuant to §1104(a)(1).

Section 1104(a)(2):

The applicability of §1104(a)(2) is addressed herein, to the extent it may be deemed appropriate. As such, the Court, in its discretion, determines whether the appointment of a trustee is in the best interest of the Debtors' estates. *In re SunCruz Casinos, LLC,* 298 B.R.821, 829 (Bankr.S.D. Fla. 2003). Rather than mandate a trustee appointment as is required under §1104(a)(1), courts generally apply a cost benefit analysis in determining whether such appointment is to be made. *Id.*

Upon applying the provisions under §1104(a)(2), the outcome is consistent with that reached under §1104(a)(1) herein - a trustee should be appointed. The movant, PNC, has lost all confidence in the Debtors' ability to restructure their debt to satisfy their debt service. (Phillips, Direct). This conclusion was reached by PNC, following the Bank's lending relationship which spans nearly four years. (See, PNC's Motion to Appoint Trustee, Exh. A). Not only have the Debtors made no payment on its obligations to PNC since May of 2009, they clearly are delinquent on their loan obligations to their other two secured lenders. This key factor is taken into consideration with other considerations.

Three (3) months have lapsed since the Debtor sought voluntary bankruptcy relief on December 4, 2009. Notwithstanding the afforded bankruptcy protection, no adequate protection payments have been made to the Debtors' prime lender (i.e., PNC) which is undersecured. It is uncontested that PNC's security interest is undersecured. Further, the Debtors acknowledge that their operational viability continues to spiral downward some three months into its bankruptcy. (See Debtors' Trial Brief at 12-14). During this same period tenant occupancy has decreased from 90% to 62%. Acknowledging its need to restore a contractual relationship with the local housing authority (CMHA) to obtain a more steady stream of monthly revenues with more

09-21481-jps    Doc 102    FILED 03/08/10    ENTERED 03/08/10 15:38:48    Page 7 of 9

stabilized tenants, such has not become a reality postpetition. Further, the record is silent to show where the Debtor has effectuated necessary deposit requirements with utility providers to satisfy any requirements for continued utility service. Nor has the Debtor amended its 2008 tax return to address noted discrepancies acknowledged therein. The record fails to show where the Debtor has undertaken remedial measures to segregate tenant rent deposits into interest bearing accounts. *See,* O.R.C. 5321.16 (requiring security deposits to be placed in an interest bearing account if the tenant remains in possession of the premises for six months or more); (Spinelli, Cross-Exam). Lastly, the evidence admitted shows that the Debtors' principals have continued to pay personal debt from the Debtors' corporate checking account postpetition. (S.Lyons, Cross-Exam; R.Lyons, Cross-Exam).

Finally, it has not escaped the Court's attention that the Debtor offered to convey the subject properties to PNC in lieu of further legal proceedings prepetition. Such offer, although not accepted by PNC, is a tacit acknowledgment by the Debtors of their inability to maintain a fiscally viable operation. (See, Exh. A). Additionally, the Debtors proposed the creation of new deposit accounts to be opened and for PNC to "take over all of the bills related to the properties." *Id.*

The totality of these continuing postpetition deficiencies clearly depict a financially distressed debtor which is incapable of exercising the necessary fiscal controls to protect the security interest of its secured lenders and other parties in interest. Immediate measures must be taken to staunch the continuing diminution of estate assets. To the extent that the expenses of an appointed trustee may exceed the Debtors' ability to defray such costs, PNC is willing to cover any such costs. (Phillips, Direct).

8

Thusly, upon these factual findings and legal conclusions, appointment of a trustee is also warranted pursuant to §1104(a)(2) of the Bankruptcy Code.

*****

Accordingly, the Motion to Appoint a Trustee is granted. The appropriate person to serve in this capacity will be determined by the Region's U.S. Trustee, forthwith. The Debtors' Objection is hereby overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

Dated, this 8th day of
March, 2010

JUDGE RANDOLPH BAXTER
UNITED STATES BANKRUPTCY COURT

cc: Daniel M. McDermott
U.S. Trustee, Region 9,
Ken Hirz, Clerk of Court